<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

EMISSIVE ENERGY CORPORATION,

         Plaintiff,

v.

OLIGHT STORE USA, INC.,

         Defendant.

Civil Action No. 24-6214 (SDW) (JBC)

**MARKMAN OPINION**

March 16, 2026

**WIGENTON**, District Judge.

      Before this Court are the briefs and supporting materials of Plaintiff Emissive Energy Corporation ("Plaintiff") and Defendant Olightstore USA, Inc. ("Defendant") regarding their request for patent claim construction pursuant to Local Patent Rule 4.5(a). This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a). Venue is proper under 28 U.S.C. §§ 1391 and 1400(b). This Court held a *Markman*[1] hearing on December 17, 2025 regarding patent claims in Plaintiff's U.S. Patent Nos. 9,488,439 ("the '439 Patent") and 9,810,411 ("the '411 Patent") (collectively, the "patents in suit"). After carefully considering the parties' written and oral arguments, this Court construes the disputed claim terms and preamble as discussed below.

    **I.**      <u>**BACKGROUND**</u>

---

[1] *Markman v. Westview Instruments Inc.*, 52 F.3d 967 (Fed. Cir. 1995).

The patents in suit involve a flashlight designed for use with a pistol.[2]  The Abstract of the '411 Patent outlines the purpose of the invention:

> A flashlight for use with a pistol, the pistol having a trigger guard and a mounting rail.  The flashlight includes an elongated housing having a clamping mechanism for mounting to the mounting rail, a light source at one end thereof, and paddle switches at an opposing end.

'411 Patent at 2.

Compared to previous versions of pistol-mounted flashlights, this invention makes the user's operation of the switch more intuitive and comfortable by incorporating an ergonomic paddle switch which coincides with the user's gripping motion of the firearm.  D.E. 39 at 7–8.  An image of the claimed flashlight attached to a pistol is illustrated below:



FIG. 3

'439 Patent at 6.

At issue are three claims:  Claim 6 of the '439 Patent and Claims 1 and 8 of the '411 Patent. D.E. 38 at 5.  The specifications of both Patents are largely the same, though the '411 Patent has several amendments and additions.  *Id.*  Plaintiff asserts that Defendant, a direct competitor,

---

[2] The facts in this Opinion are generally taken from the parties' Joint Claim Construction and Prehearing Statement (D.E. 35), *Markman* briefs (D.E. 38, 39, 41, 42), and the Complaint (D.E. 1).

infringed the patents in suit by making, using, selling, offering for sale and/or importing the accused products. *See generally* D.E. 1. Plaintiff commenced this action on May 16, 2024 and Defendant filed its Opening *Markman* Brief on June 12, 2025. (*See* D.E. 1, 38.)

## II.    LEGAL STANDARD

Patent claim construction is a matter of law for the court. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995). A person of ordinary skill in the art ("POSITA") is deemed to read the claim term in the context of the entire patent, including the specification[3], which is usually dispositive and "the single best guide to the meaning of a disputed term." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313–1315 (Fed. Cir. 2005) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). Unless otherwise compelled, the court should presume and give full effect to the plain and ordinary meanings of the terms in the claim. *Bristol-Myers Squibb Co. v. Immunex Corp.*, 86 F. Supp. 2d 447, 448 (D.N.J. 2000) (citing *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999)). If the ordinary meaning of a claim term is "readily apparent", the claim construction process "involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314 (citing *Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001)). "The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be . . . the correct construction." *Id.* at 1316 (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)).

---

[3] The specification of a patent includes a written description and drawings (figures) of the invention, which explains the best way to make and use the invention to a POSITA. 35 U.S.C. § 112(a); 37 C.F.R. § 1.81(a), (b) ("The applicant for a patent is required to furnish a drawing of the invention where necessary for the understanding of the subject matter sought to be patented. Drawings may include illustrations which facilitate an understanding of the invention. . .").

Although claim terms are presumptively given their plain and ordinary meanings, the Federal Circuit has cautioned against constructions that rely solely on dictionary definitions divorced from the context of the written description. *Id.* at 1321. Recognizing the fine line between using the specification to interpret the meaning of a claim and improperly importing limitations from the specification into the claim, the Federal Circuit has instructed courts to focus on determining how a POSITA would understand the claim terms in the context of the patent. *Id.* at 1323. Further, the Federal Circuit has generally declined to interpret claim terms in a way that excludes preferred embodiments[4] in the specification. *Phillips*, 415 F.3d at 1323; *Oatey Co. v. IPS Corp.*, 514 F.3d 1271, 1276 (Fed. Cir. 2008); *Vitronics Corp.*, 90 F.3d at 1583 ("Such an interpretation is rarely, if ever, correct and would require highly persuasive evidentiary support.").

There are two exceptions to the general rule that claim terms are given their plain and ordinary meaning: "(1) when a patentee sets out a definition and acts as his own lexicographer, or (2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (citing *Vitronics Corp.*, 90 F.3d at 1580). To act as its own lexicographer, a patentee must clearly present a definition of the disputed claim term other than its plain and ordinary meaning and express its intent to redefine the term. *Id.* (quoting *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002); *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1381 (Fed. Cir. 2008)). Similarly, to disavow the full scope of a term, the patentee must demonstrate clear intent to deviate from the plain and ordinary meaning by including in the specifications

---

[4] An embodiment in a patent refers to a particular version or example of the invention described in the patent. Embodiment, United States Patent and Trademark Office, Glossary, https://www.uspto.gov/learning-and-resources/glossary#sec-E.

"expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." *Id.* (quoting *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002)).

During interpretation of a claim, courts should initially look to intrinsic evidence, namely "the patent claims, the specification and the prosecution history if in evidence." *Bristol-Myers Squibb Co.*, 86 F. Supp. 2d at 448. If the intrinsic evidence alone will not resolve the ambiguity, the Court may rely on extrinsic evidence, which includes expert testimony, treatises, dictionaries and articles. *Id.* at 448–49 (quoting *Vitronics Corp.*, 90 F.3d at 1583). Extrinsic evidence may not be used to vary or contradict the meaning established by the intrinsic evidence. *Phillips*, 415 F.3d at 1324 (citing *Vitronics Corp.*, 90 F.3d at 1584). A key aspect of claim construction is to assist the jury in understanding complicated language and concepts, should the case go to trial. *AFG Indus., Inc. v. Cardinal IG Co., Inc.*, 239 F.3d 1239, 1247 (Fed. Cir. 2001).

### III. DISCUSSION[5]

The parties dispute the meanings of four claim terms and one preamble in the patents in suit. The disputed terms and preamble are: (1) the Preamble to Claim 6 of the '439 Patent ("Preamble") ("A flashlight for use with a pistol, the pistol having a trigger guard and a mounting rail extending forwardly of the trigger guard, said flashlight comprising:"); (2) "L-shaped paddle actuator" as used in Claim 6 of the '439 Patent; (3) "in a plane" as used in Claims 1 and 8 of the '411 Patent; (4) "inwardly" as used in Claims 1 and 8 of the '411 Patent; (5) "A hinge pin which

---

[5] Claims are construed from the vantage point of a POSITA at the time of the invention. *Phillips*, 415 F.3d at 1313. Thus, for each patent, before this Court can review the bounds of the claims in light of the specification, it must establish the level of skill that a POSITA possessed at the time of the invention. *AllVoice Computing PLC v. Nuance Commc'ns, Inc.*, 504 F.3d 1236, 1240 (Fed. Cir. 2007). Here, the parties and Plaintiff's expert, Dr. Stephen A. Batzer, generally agreed that a POSITA in this case would have a mechanical engineering degree or an equivalent field plus a minimum of one to two years of practical experience in product design or manufacturing and/or a minimum of four years of training or experience in designing or manufacturing flashlights or similar products. *See* D.E. 39-8 ("Batzer Decl.") ¶ 21, D.E. 42 at 22; *Markman* Hr'g Tr. at 48–49.

has an axis extending [in a direction] perpendicular to said longitudinal axis of said housing" as used in Claim 6 of the '439 Patent and Claims 1 and 8 of the '411 Patent.  For the reasons discussed below, this Court concludes that the Preamble is not limiting and gives each term its plain and ordinary meaning, *i.e.* no construction is required.

### A.  The Preamble of Claim 6 of the '439 Patent is Not Limiting

Generally, preamble language is not considered limiting.  *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1347 (Fed. Cir. 2012).  Although there is no bright line rule for when a preamble limits claim scope, a preamble is generally treated as limiting if it "recites essential structure or steps, or if it is 'necessary to give life, meaning, and vitality' to the claim." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) (quoting *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999)).  However, a preamble is not considered limiting when the claim body describes a structurally complete invention and when the preamble is only designed to state a purpose or intended use for the invention. *Id.* (quoting *Rowe v. Dror*, 112 F.3d 473, 478 (Fed. Cir. 1997)).

Here, the Preamble states:

 "A flashlight for use with a pistol, the pistol having a trigger guard and a mounting
 rail extending forwardly of the trigger guard, said flashlight comprising:"
'439 Patent, Claim 6, 7:41–43.

First, the phrase "for use with a pistol" is an example of non-limiting language that describes the intended use and purpose of the invention, rather than defining a structural limitation. D.E. 39 at 16; '439 Patent, 7:41–8:27.  Both patents establish that the invention at issue is the flashlight itself, and not a pistol.  '439 Patent, 2:27–28 ("the present invention provides for a novel flashlight assembly. . ."); '411 Patent, 1:18–20 ("The present invention

relates generally to a multi-function flashlight assembly that includes an integrated weapon mounting interface. . .").  Consistent with that framework, the Preamble does not recite any necessary structure or operation of the flashlight itself but describes the context in which the flashlight is designed to be used.  *See* '439 Patent, Claim 6, 7:41–43; D.E. 39 at 15–17.  Second, the body of Claim 6 describes a complete flashlight made up of a housing, light source, switch mechanism that includes a paddle actuator, and clamping assembly.  '439 Patent, Claim 6, 7:44–8:27; D.E. 39 at 17–18.  These components are fleshed out in the body of the claim, describing a structurally complete invention even without the preamble language, demonstrating that the preamble does not contribute to the definition of the claimed invention and thus is not limiting.  *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1350 (Fed. Cir. 1998).

Defendant argues that the Preamble is limiting because it provides the only antecedent basis for the terms "trigger guard" and "mounting rail", which appear in the claim body.  D.E. 38 at 9–10.  While a preamble is generally considered limiting when it provides antecedent bases for terms in the claim body, those terms must be directed at the claimed invention itself, rather than serving as a reference point to aid in understanding how the invention works.  *See C.R. Bard, Inc.*, 157 F.3d at 1350 (holding the preamble not limiting because although it recited the gun structure into which the claimed invention— the biopsy needles—fit, the gun structure provided a reference point to help define the needles and was not itself part of the claimed invention); *Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 879–880 (Fed. Cir. 1991) (concluding that preamble terms referring to parts absent from the claimed invention  were not structural limitations, but served as reference points to help understand and construe the claim).

Similarly here, the terms "trigger guard" and "mounting rail" describe the pistol and not the flashlight, but are recited in the Preamble to provide a reference point for the pistol that is intended to be used with the claimed invention. *See* D.E. 41 at 9. Thus, the Preamble is not limiting, and no alternative construction is necessary.

**B. The Terms "L-shaped", "In a Plane", and "Inwardly" Are Not Indefinite and Do Not Require Construction Beyond Their Plain and Ordinary Meanings[6]**

The Patent Act imposes a "definiteness requirement", which is met if the patent, when viewed in the light of the specification and prosecution history, informs a POSITA of the scope of the invention with reasonable certainty. 35 U.S.C. § 112(b); *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014). Though this standard requires clarity, it recognizes that absolute precision is not possible and requires certainty "not greater than is reasonable." *Id.*; *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 806 (Fed. Cir. 2007) ("[A] sound claim construction need not always purge every shred of ambiguity."). As an invalidity defense, indefiniteness must be supported by clear and convincing evidence, and attorney argument alone is insufficient to demonstrate indefiniteness. *Sonix Tech. Co. v. Publications Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017) (citing *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1345 (Fed. Cir. 2015)); *see Purdue Pharm. Prods., L.P. v. Actavis Elizabeth, LLC*, No. 12-5311, 2014 WL 2624787, at *6 (D.N.J. June 11, 2014) (citing *Cacace v. Meyer Mktg. (Macau Com. Offshore) Co.*, 812 F. Supp. 2d 547, 560 (S.D.N.Y. 2011)). The key purpose of the definiteness requirement is to foster innovation by drawing the boundary between what is infringing and what is not. *See Nautilus,*

---

[6] At the *Markman* hearing, Defendant raised a new claim construction for "in a plane" and Plaintiff for "inwardly". *Markman* Hr'g Tr. at 79–80. Since this Court holds that neither term requires further construction beyond its plain and ordinary meaning, this Court need not consider these proposed constructions nor discuss whether they were improperly raised at the *Markman* hearing.

*Inc.*, 572 U.S. 898 at 909–910 (quoting *United Carbon Co. v. Binney & Smith Co.*, 317 U.S. 228, 236 (1942)).

     i. <u>"An L-shaped paddle actuator"</u>

Courts have consistently rejected the argument that claims involving terms of degree are inherently indefinite, as this would require mathematical precision from the patentee. *Sonix Tech. Co.*, 844 F.3d at 1377 (citing *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370 (Fed. Cir. 2014) and quoting *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1384 (Fed. Cir. 2005)). A term of degree is considered indefinite if it is completely subjective, or "depends 'on the unpredictable vagaries of any one person's opinion.'" *Interval Licensing LLC*, 766 F.3d at 1371 (quoting *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1350 (Fed. Cir. 2005)). Courts have found a term of degree to be definite when the specification, or the written description of the invention, provides "objective boundaries" and when the "intrinsic evidence provided guidance as to the scope of the claims" for a POSITA. *Compare Sonix Tech. Co.*, 844 F.3d at 1377 (holding the term "visually negligible" not indefinite because it is not a purely subjective term and the written description (including a general design for a visually negligible indicator, two specific examples of visually negligible indicators, and requirements for the graphical indicators being negligible to human eyes) and prosecution history sufficiently inform a POSITA with reasonable certainty); *Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1332 (Fed. Cir. 2010) (holding the term "not interfering substantially" not indefinite because the specification provided examples of what does not interfere substantially as well as general criteria for avoiding substantial interference), *with Interval Licensing LLC*, 766 F.3d at 1371 (holding the term "unobtrusive manner" indefinite because the specification provided insufficient guidance to a POSITA, leaving

9

unclear which components the term modified or whether the term referred to temporal, spatial, or both contexts).

Here, the term "L-shaped" is one of degree, as argued by Defendant and suggested by Plaintiff's expert, Dr. Batzer. *Markman* Hr'g Tr. at 61; D.E. 38 at 15; D.E. 42 at 10–11; D.E. 42-2 ("Batzer Dep.") at 101 ("In an L, they are generally perpendicular. I guess what I'm hesitant about is it's 89 degrees perpendicular. Well, yes. How about 70? Well, probably not."). Though it is a term of degree, "L-shaped" is not indefinite because the specification provides enough objective boundaries as to what "L-shaped" means to a POSITA within the context of the claims. In each asserted claim, "L-shaped" is used to describe the paddle actuator component of the invention's switching mechanism. *See* '439 Patent, Claim 6, 8:6–7; '411 Patent, Claim 1, 7:38–39; Claim 8, 8:30–31. The specification of each Patent describes the paddle actuator as comprising a pad surface on one end thereof and actuator arm that extends from the end of the actuator opposing the pad surface. '439 Patent, 4:64–5:9; '411 Patent, 4:31–44. In conjunction with that description, Figure 5a (reproduced below) of the patents in suit visually illustrates the L-shape of the paddle actuator for the POSITA, including numbered parts to guide the POSITA through the description. '439 Patent at 9; '411 Patent at 9. Patent drawings, as part of the specification, are a crucial part of the claim construction process. *See Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1306 (Fed. Cir. 2003); § 112. Dr. Batzer's testimony, though external evidence, further supports this interpretation. *See* Batzer Decl. ¶¶ 24–29.



FIG. 5a

'439 Patent at 9.

Despite Defendant's arguments to the contrary, the term "L-shaped" is not similar to the term "block-like" as discussed in *In re Walter*, 698 F. App'x 1022 (Fed. Cir. 2017). In *Walter*, the Court held that the term "block-like" is a term of degree "without any accompanying guidance in the intrinsic record" and that it covered a "range of shapes" without any objective boundaries for determining whether a particular shape was sufficiently "block-like". *Id.* at 1026. Because the specification taught that the invention could be "fabricated in *any shape*" without exceeding the scope of "block-like", the *Walter* Court held the term to be indefinite. *Id.* Here, the term "L-shaped" does not cover a range of shapes and there is sufficient guidance in the written description and figures to teach a POSITA of the term's scope. Additionally, as exemplified by Figure 5a, the paddle actuator at issue could not be manipulated into *any shape* and still satisfy the scope of "L-shaped". *See* '439 Patent at 9; '411 Patent at 9. Thus, the term "L-shaped" is not indefinite and without evidence of Plaintiff's lexicography or disavowal, its plain and ordinary meaning applies.

ii.  "In a plane"

The primary dispute regarding the term "in a plane" is whether three-dimensional objects like the paddle and actuator arm portions of the paddle actuator can be "in a plane", wherein "plane" is a two-dimensional concept with zero thickness.  *See* D.E. 41 at 19–20.  *Simpson Strong-Tie Co. Inc. v. Columbia Insurance Co.*, No. 2023-1944, 2025 WL 39807 (Fed. Cir. Jan. 7, 2025) is instructive on this issue.  In that case, the appellant argued that the claims were indefinite because the limitation "each extension flange lying in an extension flange plane" failed to inform a POSITA of "where the [three-dimensional] 'extension flange' is located relative to the [two-dimensional] 'extension flange plane.'"  *Id.* at 3.  The Federal Circuit rejected this argument, explaining that when the term "plane" is used in a three-dimensional context, it can refer to an "orientation of a (largely planer) object", with expert testimony further supporting that contention.  *Id.* at 5 (". . . shows that the Board [appellee] was correct to reject the attribution of a mathematical meaning in the present context, which instead calls for a meaning in which "plane" refers to an orientation of a (largely planar) object. . . [I]n this context, the relevant artisan 'would recognize that when the phrase 'lying in a . . . plane' is used in reference to a three[-]dimensional object—in this case the extension flange—the end-to-end extension of the object can be effectively described as being arranged in the plane.'").

Here, like in *Simpson Strong-Tie*, the term "in a plane" describes the orientation of the paddle portion and actuator arm of the paddle actuator.  The relevant portions of the claims are reproduced below:

> "said paddle portion [of the L-shaped paddle actuator] extends rearwardly from said hinge pin in a plane which runs parallel to said longitudinal axis of said housing…."

'439 Patent, Claim 6, 8:16-18; '411 patent, Claim 1, 7:46–48 and Claim 8, 8:38–40.

> said actuator arm portion [of the L-shaped paddle actuator] projecting inwardly in a plane which extends [in a direction] perpendicular to said longitudinal axis of said housing…."

'439 Patent, Claim 6, 8:20-23; '411 patent, Claim 1, 7:51–53 and Claim 8, 8:46–48.

The context of the patents in suit guides a POSITA that the term "in a plane" describes the orientation of the paddle portion and actuator arm portion and does not require the plane to intersect the object, as Defendant contends. D.E. 41 at 21; D.E. 38 at 17. Specifically, Figure 5a of the patents in suit illustrates the spatial relationships between the paddle portion, actuator arm portion, and the dotted lines B and C which represent the parallel and perpendicular planes. *See supra* Figure 5a. Dr. Batzer's expert testimony further supports this interpretation—he opines that in an engineering context, "plane" is a common term that is often used as references for "determining the position of objects or surfaces." Batzer Decl. ¶¶ 34–35.

Defendant argues that the term is indefinite because it does not define any specific plane in which the paddle portion or actuator arm must exist. D.E. 38 at 17–18. Defendant contends that this lack of specificity means that an infinite number of planes exist which "run parallel" to the longitudinal axis of any device—thus failing to limit the scope of the claim in any way. *Id.* at 18. However, "a claim is not indefinite just because it is broad." *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1347 (Fed. Cir. 2022); *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1367 (Fed. Cir. 2017) ("[T]he inference of indefiniteness simply from the scope finding is legally incorrect. . ."). Therefore, Defendant's overbreadth argument does not apply to the issue of indefiniteness and without Plaintiff's lexicography or disavowal, the plain and ordinary meaning of "in a plane" applies.

### iii.   "Inwardly"

As discussed above, a claim term generally does not receive its plain and ordinary meaning if the patentee acts as his own lexicographer, clearly presenting an alternative definition and expressing his intent to redefine the disputed term, or if the patentee disavows the full scope of the claim term. *Thorner*, 669 F.3d at 1365. The Federal Circuit applies a demanding standard for finding lexicography, often declining to infer lexicography without definitional language, while nevertheless recognizing that the specification plays a critical role in defining claim terms and may implicitly define terms. *Compare Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1372 (Fed. Cir. 2014) ("The standards for finding lexicography and disavowal are exacting . . . There is no such disclaimer or lexicography here. There are no words of manifest exclusion or restriction."), with *Phillips*, 415 F.3d at 1321 ("the specification 'acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication.') (quoting *Vitronics Corp.*, 90 F.3d at 1582)). Again, courts are instructed to determine how a POSITA would understand a claim term in the context of the whole patent, which includes the specification. *Id.*

Here, the patents in suit do not contain clear and convincing evidence that Plaintiff intended to redefine the term or disavow its plain and ordinary meaning. Turning to extrinsic evidence, Dr. Batzer opines that a POSITA would understand the term "inwardly" with reasonable certainty in the context of the patents, citing to Figure 5a in the specification, which illustrates the paddle portion of the paddle actuator pivoting toward the interior. Batzer Decl. ¶¶ 43–49. Additionally, claim construction is only appropriate "when the parties raise an actual dispute regarding the proper scope of these claims." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008). The parties here do not meaningfully dispute the direction "inwardly" with respect to the invention, as Defendant agrees with Dr. Batzer's definition that he set forth in this

deposition and both parties' proposed constructions indicate the same direction. *See* D.E. 42 at 21; D.E. 41 at 25; Batzer Dep. at 48–49. Thus, no further construction is needed and the plain and ordinary meaning of "inwardly" applies.

Defendant contends that Plaintiff acted as its own lexicographer in defining "inwardly", arguing that the '411 Patent specification expressly defines the term as "toward the trigger guard", rather than its plain and ordinary meaning of "towards the interior", because the specification states that the paddle actuator is "hingeably movable in a side-to-side motion." D.E. 38 at 21–22. Further, Defendant argues that this definition renders the claims indefinite because the term "trigger guard" is absent in the claims of the '411 Patent and therefore lacks antecedent basis. D.E. 38 at 22. This Court rejects both arguments. First, Figure 5a of the patents in suit shows that "towards the interior" and "towards the trigger guard" indicate the same direction with respect to the claimed invention. *See supra* Figure 5a; D.E. 41 at 25. Since there is no meaningful difference between the term's plain and ordinary meaning and what the specification indicates, there is no clear and convincing evidence that Plaintiff intended lexicography by placing a "special meaning to the term." *Laryngeal Mask Co. v. Ambu*, 618 F.3d 1367, 1372 (Fed. Cir. 2010). Second, although the term "trigger guard" does not appear in the claims of the '411 Patent, its absence does not render the claims indefinite because the trigger guard is expressly depicted in Figure 3, which shows the trigger guard and the claimed invention when mounted to a pistol, thus apprising a POSITA of the claim's scope. *See generally* '411 Patent. Moreover, the lack of an antecedent basis does not necessarily make a term indefinite if a POSITA could understand the term's scope within the context of the patent. *In re Downing*, 754 F. App'x 988, 996 (Fed. Cir. 2018).

> **C. "A Hinge Pin Which Has An Axis Extending [In A Direction] Perpendicular To Said Longitudinal Axis Of Said Housing" Does Not Require Further Construction**

Courts have declined to impose a rigid mathematical definition on the term "perpendicular", applying its ordinary spatial meaning even though its dictionary definition is "being at right angles to a given line or plane"[7], which would suggest a strict 90-degree requirement. *See Stryker Trauma S.A. v. Synthes (USA)*, No. 01-3879, 2005 WL 2245385, at \*4 n.3 (D.N.J. Sept. 8, 2005) (". . . the Court sought only to avoid a rigid reading of the claims that would have covered only devices allowing bar insertion at a perfect 90 degree angle."); *San Disk Corp. v. Round Rock Rsch. LLC*, No. 11-5243, 2013 WL 1899790, at \*4 (N.D. Cal. May 7, 2013) ("[A]lthough "perpendicular" may have a theoretical, mathematical, meaning of lines at an exact 90 degree angle to each other, its use in a claim term cannot ordinarily require an infinite degree of precision in real world manufactured materials.").

Here, Claim 6 of the '439 Patent and Claims 1 and 8 of the '411 Patent have the limitation "said paddle actuator being mounted on a hinge pin which has an axis extending [in a direction][8] perpendicular to said longitudinal axis of said housing." '439 Patent, Claim 6, 8:12–14; '411 Patent, Claim 1, 7:44–46; '411 Patent, Claim 8, 8:34–37. The only disputed term in the limitation is "perpendicular" and its plain and ordinary meaning should be applied. D.E. 39 at 32; D.E. 35 at 12. Construing "perpendicular" rigidly to require a perfect 90-degree angle, which Defendant argues is necessary to clarify a "somewhat technical term" for the jury, would improperly exclude real-world manufactured pieces that are not mathematically exact, imposing a theoretical precision that neither the claims nor the courts require. D.E. 38 at 25.

---

[7] Perpendicular, *Merriam-Webster.com Dictionary* (visited Mar. 3, 2026), https://www.merriam-webster.com/dictionary/perpendicular.

[8] Claim 1 of the '411 Patent does not include the "in a direction" language in its limitation. The parties do not dispute that both versions have the same meaning. D.E. 38 at 25; D.E. 39 at 32.

The specification of the '411 Patent further supports this interpretation, describing the hinge pin as "vertically oriented". '411 Patent, 2:47–48 ("The paddle actuator is mounted on a vertically oriented hinge pin . . ."). Although the term "vertically" or "vertical" has the dictionary definition of "perpendicular to the plane of the horizon or to a primary axis"[9], the Federal Circuit has declined to impose mathematical definitions to spatial or positional language at the claim construction stage. *See Andrew Corp. v. Gabriel Elecs., Inc.*, 847 F.2d 819, 821 (Fed. Cir. 1988) (determining that the terms "approach each other" and "close to" did not require further construction because the terms are "ubiquitous in patent claims" and sufficiently precise). Further, the context of both patents—including Figures 3 and 5a—provide the mechanical context in which this limitation operates, and a POSITA would reasonably understand that achieving a precise 90-degree angle for a hinge pin would be extremely difficult, if not nearly impossible, to consistently measure and manufacture. *See* '411 Patent at 6, 9, 2:47–50.

Moreover, a patentee is "free to choose a broad term and expect to obtain the full scope of its plain and ordinary meaning unless the patentee explicitly redefines the term or disavows its full scope." *Thorner*, 669 F.3d at 1367. As Plaintiff has neither redefined nor disavowed the term's full scope, this Court will adopt its plain and ordinary meaning and decline to impose a mathematically precise definition of "perpendicular". If the parties dispute what degree of deviation from a 90-degree angle is sufficient to qualify as "perpendicular" in the context of the patents in suit, they may present those arguments to the jury in the infringement phase. *See PPG Indus. v. Guardian Indus. Corp.*, 156 F.3d 1351, 1355 (Fed. Cir. 1998) ("[A]fter the court has defined the claim with whatever specificity and precision is warranted by the language of the claim

---

[9] Vertical, *Merriam-Webster.com Dictionary* (visited Mar. 3, 2026), https://www.merriam-webster.com/dictionary/vertical.

and the evidence bearing on the proper construction, the task of determining whether the construed claim reads on the accused product is for the finder of fact."). Lastly, though patentees often modify terms using words like "substantially" and "about" to "avoid a strict numerical boundary to the specified parameter", courts are not permitted to rewrite claims or insert language that the patentee did not include. *Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1367 (Fed. Cir. 2001) (quoting *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1217 (Fed. Cir. 1995)); *Liquid Dynamics Corp. v. Vaughan Co.*, 355 F.3d 1361, 1368 (Fed. Cir. 2004) ("The term 'substantial' is a meaningful modifier implying 'approximate,' rather than 'perfect.'"); *Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004) ("This court, however, repeatedly and consistently has recognized that courts may not redraft claims, whether to make them operable or to sustain their validity."). Although Plaintiff could have proposed including such a modifier, Plaintiff did not, and this Court cannot modify the claim language.

### D.  Alternate Proposed Construction

A core principle in claim construction is that courts are not permitted to rewrite claims that depart from the patentee's express intent—the court's focus is to resolve the disputed meanings and scopes of specific claim terms. *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). Consistent with that principle, courts generally decline to construe entire claim phrases or combine claim terms to be construed together. *Green Pet Shop Enters., LLC v. Comfort Revolution, LLC*, No. 20-2130, 2021 WL 5450185, at *4 n.4 (D.N.J. Nov. 19, 2021) (declining to construe entire phrases because doing so would undermine the requirement that disputed terms be interpreted in the context of the surrounding claim language) (quoting *ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003)); *Chef Am., Inc.*, 358 F.3d at 1374.

Here, Defendant has proposed a lengthy alternate construction which strings together the disputed claim terms, arguing that the terms should "all be considered and construed together because they all concern . . . the paddle actuator." D.E. 38 at 26.  This approach departs from the core principle of claim construction because it effectively asks this Court to rewrite a part of the claim. D.E. 39 at 36.  Further, like the proposed construction in *Green Pet Shop Enterprises, LLC*, this approach would disregard the important context of the surrounding terms.  Thus, Defendant's proposed alternate construction is denied.

## IV.     CONCLUSION

For the reasons stated above, this Court construes the disputed terms and preamble as set forth in this Opinion.  An appropriate order follows.

/s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:     Parties
         James B. Clark, U.S.M.J.

19